We'll turn to our next case. Fucci v. First American Title, 24-4051. I'm tall. Thank you, Your Honor. May it please the court. My name is David Tufts with the law firm Denton's. I represent the defendants in this case. Miss Kirsten Parkin and her employer, First American Title Insurance Company. It's my intention to reserve five minutes, assuming that the question of the court allows that. I am, of course, here to answer the court's questions. So, thank you, Your Honor. I'll begin with a basic legal principle that permeates everything that's before the court today. And that principle is that the law requires anyone who claims the benefits of an agreement to honor and abide by the burdens imposed on them by that very same agreement. That applies to all of the legal doctrines that we're presenting today. And as you've seen in the paper, there are really five doctrines that we've given the court to examine. Any one of which would be sufficient for the court to examine and reverse what happened below. They're all derivative of the arbitration provision in the contract to which you're not a party. Yes. Let me be clear, though, when you say party. We are not a—Parkin and First American are not signatories to that contract. But we assert party status, and I have an argument about that, as you've seen in the papers. That's a very important distinction. And so, if I may, that's issue number one of five. And this issue of party status, or might I say privity, is a very key central issue to this case. The issues presented could be labeled in terms of the party issue. Are the defendants parties? And then the remaining four issues, which are equitable principles, which would apply to allow a non-signatory or a non-party to enforce rights under an agreement. So, it's, in my view, critical that the court address the party issue and understand the relationship of the contract and the parties that are parties to that agreement, and the role of the escrow agent, Parkin and First American. And as I indicated, the court could examine that issue. I think the court should start there. And I think the cases are compelling on this point. And I would give the court four cases. Two from Ohio, because there's Ohio law and Florida law, and two from Florida. These cases are Hoffman, number two is Woffman, number three, those are Ohio, number three and four are Florida, number three would be Armbruster, and number four would be Seligman. Those are found on pages 19 and 20 of the opening brief, and they're cited throughout all the briefs. What those cases instruct is the contractual relationship that exists in real estate transactions of this nature. You will have a buyer and a seller, right, the parties to the transaction. One will buy an interest in property, one will sell it. And what those cases instruct is, and examine, is the question of what is the relationship of the escrow agent in that situation. And they teach that the buyer and the seller agree to an exchange to buy property. And then those two parties jointly select an escrow agent and direct the escrow agent to undertake the closing on their behalf. And so you have a buyer and seller in privity, and they jointly make an offer to an escrow agent, which the escrow agent can accept, usually does, and that role of receiving the subject matter, receiving the money and the deed, confers upon the escrow agent privity status. I will specifically refer you to those cases. Does it matter that the agreement before us is not an escrow agreement, it's a purchase agreement? So it's labeled a purchase agreement, but it contains instructions to the escrow officer as to how to handle the closing. So in order to accept your, or endorse your argument that you just made, would we have to understand the contract at issue here to be an escrow agreement? So it is, so not necessarily would be the direct answer to your question. On the party point, though? On the party point I'm making, the privity point. The privity point. I like to use that word. Sure. The document needs to give some instructions as to how to handle the escrow, which this document does. And on 3.2, there's paragraph 6 about the closing, there's payment of fees and all that kind of thing. So it very clearly gives those instructions to First American. The law, when you read those four cases, Hoffman, Laughlin, Armbruster, and Seligman, you'll see that those cases talk about how the law can recognize a contract in three different ways. To answer your question directly, Justice Rossman, there can be an express contract where it's specifically said what's going to happen and there's an offer and acceptance. There can be a contract implied in fact where the parties have had an exchange verbally or in writing about what will happen and then they act consistent with that. Or there can be a contract implied at law. And in those cases, why those cases are so important is because in those cases, you have a purchase and sell agreement that's signed by a buyer and a seller. And in those cases, the buyer and seller specifically direct escrow activities towards an escrow agent. They request the escrow agent to do things. The escrow agent is not a signatory. The escrow agent just simply acts and undertakes the escrow. And then in those cases, there's an allegation that something's gone wrong. Can I ask you to move on? Aren't you suggesting that there was an implied in law agreement here? Yes, exactly. Right. But the fact that there may be an implied in law agreement, which you've got to have something you're basing your breach of fiduciary duties on here. It's an implied in law agreement. What does that have to do with whether that implied agreement somehow incorporated the arbitration clause of the PSAs? That's two separate things, and I don't think any of those cases that you cite, any of the four, stand for that proposition. Good point and fair point, Your Honor. I'm harping on this idea that there's privity. I'm trying to get you to the point of how do you get to this arbitration clause through potentially an implied agreement that your claims are based on? That implied agreement is not this contract that has this arbitration clause between the parties. So fair point, and I'll give you some additional cases. Those cases that I've cited mandate under state law that the escrow agent is in privity. So we do need to establish privity. Having established privity, we ask ourselves, what does the arbitration clause contemplate? Is First American and Ms. Parkin as the escrow agent the subject of this arbitration clause, which says all disputes between the parties will go to arbitration. The parties. Right, and that is the district court's finding and the appellee's argument that they are not signatories, they are not parties. That question is examined under state law, and I'll give you some cases. Before you do, can I ask you a question? Do you think firm waiver applies here? The firm waiver rule applies here? That you needed to object to the magistrate judge's ruling in order to preserve it through the district court proceedings to appellate review? Yes, and I believe that we did object. Did you object to sort of the textual aspect of the arbitration agreement? Yes, I think we did. You contend that you did? Yes, yes, we did. I'm sorry, back to your question, Judge Moretz. So, I would cite you to the case of Conseal v. Neogen. That's a Florida case. And Hunter v. Shields, which is an Ohio case. And then I've got two more cases. Let me talk about those. Those are cases. Go ahead, but be quick. I haven't even gotten to my question yet. I apologize, Your Honor. Well, I just would like for you to answer my question. Without citing the cases, how do you take this implied agreement that you suggest is out here based on the case law between the escrow agents and the parties, and how do you somehow then pull in this contract, the PSAs, and the arbitration clause? I'm not seeing how you connect the dots. Well, I'll be as concise as I can. It's because that clause, all disputes between the parties, it's because the law recognizes Ms. Parkin and First American as a party in privity, as a party. And I was going to cite the Auquin case and the Coakley case. I don't mean to be, I'm sensitive to not be late. At this point, I'm going to interrupt you and ask my questions. By all means, please do, Your Honor. The signatories to the agreement didn't have to have an arbitration clause in there, did they? They could have left it out. Yes, of course. And so, in a sense, you're in privity, but you can't do anything more than they can. If they didn't have an arbitration clause, you couldn't arbitrate. Do you agree? Correct. We are relying on paragraph 9. But the parties, the signatories, both agreed that they would waive the arbitration clause. They eliminated the arbitration clause. It was the trustee in bankruptcy, but he stood in the precise shoes of that signatory to the contract. So I actually think you have some pretty good arguments absent that waiver agreement, why you should be able to demand arbitration. But once you have this waiver of arbitration clause by the two parties, I don't see what leg you have to stand on, because your rights to compel arbitration are derivative of what the signatory said. I think you have to agree with that. I think you even did. But if it's derivative, you lost any right to compel arbitration, did you not? I think not, and I'd like to try to persuade you otherwise, Your Honor. It's a good question. You're right, we're invoking paragraph 9, First American Park, and invoke that. I have case law, but I'll just go right to the legal principle, which is that a non-signatory who acts consistent with the contract, such that the contract rights vest, has vested rights. And the rights vested in Ms. Parkin and First American when they undertook the escrow, for which they're being charged to have violated. Those rights vested, and the other signatories at that point have no power to waive those rights on behalf of the party who enjoys the vested rights. First American's not a party to those waivers. To be vested, was there any reliance? Yes. What evidence is there of any reliance on their arbitration provision? Because as Woffen instructs, when the buyer and seller enter into their transaction with an arbitration clause, and send those instructions to First American, as was the case here, First American was free to say, I don't agree to these terms, I don't like this contract. They, by accepting the contract, they were accepting all of the terms. All they did is accept that they will disperse the money in accordance with the terms of the paragraph involving the escrow agent. What else did they, what else did they have to... I would submit that I think that's incorrect. First American and Parkin agreed that they would receive the money and follow the instructions of the escrow as outlined in the PSA and subject themselves to all of the burdens and receive all of the benefits of that agreement including the arbitration provision. Now you say you have case law. You have case law that says that by accepting the duties of an escrow agent they have vested in all the provisions of the contract not just the escrow instructions? So, may I refer the court to the Auquin and the Coakley cases? I do. I would ask the court to review those. I'm sure you have. Spell those so I'll... Just spell them quickly. So Auquin is O-C-W-E-N versus Holman. That's all right, I just need the first name. And Coakley is K-O-E-C-H-L-I. And what do they say? And those cases hold in the context of a non-signatory to an arbitration provision that where you have a clause. So it's interesting because one of the clauses said the parties, this very exact issue in the non-signatories claiming rights. And the other clause said the buyer and seller. Very specifically buyer and seller. And the court in those cases held that the arbitration clause was enforceable on behalf of the non-signatory and that the word party should be read to encompass that non-signatory. Was there a waiver by the buyer and seller? Was there a waiver of the arbitration clause? There was no Rockwell waiver in those cases. Did you have a case where there was a waiver? I don't have a case involving an escrow with a waiver. The case I would cite the court to because I am, I like citing cases to the court, but the cases I would give the court on the issue of vesting as the key cases would be Hall, Joseph Buck Check, and Gomez. And those are in your brief. Yes, you can find the full citations in the brief. Those cases to paraphrase the cases and I can say them out of my time. I don't want to be respectful, but I'll just answer this. Or I'll follow your instruction. Go ahead. You say those three cases stand. Those three cases stand for the proposition that once the rights vest by reliance upon the agreement, by performing consistent with the agreement, they can't be waived by one of the other signatories to the relationship or the other two signatories. But they require reliance to that. And they established those cases established under state law. And in what way I'll give you time to answer in what way did First American rely on the record is there that in some way First American relied on the arbitration agreement? The answer is that First American the evidence of the record is that First American relied on the PSAs by accepting their burdens and undertaking the obligations to act and serve as the escalations. That is the reliance. And then that's the first step of reliance. The latest possible reliance would be when the First American filed its motion to compel arbitration which happened before the waiver was even signed. But does your vested rights argument assume that you're a third party beneficiary? That's a great question. I would say yes and I would phrase it this way. If you address the party issue and apply those four cases I've cited, then it would be correct to find under that state law that First American is a party. Parkin is a party in privity. And therefore the waiver is an absurdity. The other entities can't waive those rights of a fellow party. So you're correct in the sense that you only would even reach the question of waiver if you don't address the privity issue or reject us on the privity issue. But also conclude that you're a third party beneficiary. That's right. Thank you counsel. Thank you Your Honor. Thank you to the panel. Good morning. Reid Lambert for the Appalese. The Appalese consists of about over 50 families who lost 25 million dollars or so or 20 million dollars or so in the NOAA Tenant in Common Event Center what essentially turned into a Ponzi scheme. I want to pick up where we kind of left off riffing on this waiver and the question of reliance. I think it's a fair question. To say that First American relied on the arbitration provision is quite a stretch in light of the fact that their first response to the plaintiff's complaint was a motion to dismiss that asserted in very strong language that they had absolutely nothing to do with the purchase and sale agreement and therefore the action should be dismissed. They called that an agreement to which they were not even a party and I think that that was accurate. It is an agreement to which they're not a party. I want to clear up the question about party from the... Are you claiming judicial estoppel from that? What are you claiming? That's very interesting. I am claiming judicial estoppel and I understand the arguments to the contrary. Even if there is not judicial estoppel my claim is that in order to show reliance you would have to say when we entered in and performed these services we were relying on the arbitration agreement. It seems that it would then follow that your response to the complaint would be a motion to compel arbitration. Not a statement that says in a very factual way we're not a party to that  That doesn't show reliance on the contract to show up and say we're not parties to that contract. Is there anything in the record to show that First American takes ESCO duties only if the underlying agreement provides for arbitration? No. Nothing about that. No. In fact the only well there was evidence to the contrary on an unrelated contract incidentally I don't believe it's before this court because there were originally two arbitration agreements. We're only dealing with one of them at this level. Judge Moritz I think was on to what is an important baseline principle in this whole argument which is there are two separate contracts we're talking about the purchase and sale agreement is a contract the parties to which are the buyer and the seller and that's all and that's what the court found and that's what the signature block said and that's what the introductory language said. It's very hard to get over that hump. What the four cases that counsel talked about say is outside of that purchase and sale agreement you have the ESCO arrangement. I've consistently called it an arrangement throughout this case and alleged that it gives rise to fiduciary duties which those four cases say. In fact Seligman was one of the cases that I found and relied on when we drafted the complaint in the first place to say even though there's not a contract and we can't assert a claim for breach of contract against these parties because we don't have a written contract with them there are fiduciary duties that arise that bind an ESCO agent to look at the agreement at the transaction they're closing and close it in a fashion that is consistent with that and to not disperse money without permission and to safeguard the money appropriately and to act in the to safeguard the money consistent with duties to both parties. That's what we allege was breached. And your basic complaint against First American is that they dispersed money to Remington prematurely. They should have made sure that the construction had taken place but instead released all the money. Is that right? And one of the four or five reasons why that breached their fiduciary duties is because it was not consistent with the contract between the parties. But there are other reasons as well that are set forth in the complaint and discussed in some detail in the briefing and in the opinions of both magistrate and the district court. Let's just take the one where the duty arises out of the terms of the purchase agreement. I assume that it says we'll have an escrow, maybe it said with First American, and it can, it will disperse the money only when certain work has been performed. Is that, that's one of your arguments? Right. The agreement between the parties was we will put the money in, we will send the money to First American, and then it recited First American will disperse it to pay for the property and the construction costs. Aren't there cases saying that if your claim is based on duties set forth in a contract then the escrow agent in this case could say, well if you're going to rely on that contract to seek relief from us, then you're bound by the contract's arbitration provision as well. Aren't there cases to that effect? There are literally in the country hundreds of cases in Ohio and in Florida. In Florida, a small handful of cases. In Ohio, a relatively good body of cases. I'll explain why it doesn't apply here. Okay, but at least I stated the principle of law halfway correctly. Well, I can give you what I believe is the demarcation, because the answer is not in that event. It's always arbitration. It's absolutely not that. Because it's an equitable principle, and so the touchstone is kind of fairness to the parties and so forth. And there are two reasons why that doesn't apply here. And the first is because if you are asserting a claim for breach of contract, and virtually every single case that has been cited to the court on that principle, you have a situation like in Aukwin, where Aukwin came in as an assignee in the court's term, took over all of the obligations and rights and liabilities under the contract. It came in and assumed those rights. Then it applies, because you're saying if you're going to sue us for breach of contract, sometimes you'll have a parent to subsidiary. Contracts with the parent, they sue the subsidiary and say, you can't compel arbitration under the contract. The subsidiary says, look, all we did is show up to perform the very contract. What you're suing us for is breach of the very contract that contains the arbitration. Yes, in this case, so iSports, very important case in Ohio, the iSports case. And what the court said there was, while that principle is true, if you have what is essentially not a case alleging a breach of contract, but alleging something else that may touch the contract in some respects, they say it could be a statutory claim, it could be a tort claim, it could be a claim arising under a different obligation between the party, and even if the breach of that contract is something that is a claim, that doesn't make it a claim for breach of contract that would invoke the language of the arbitration agreement. But here, if the ESCO agreement said when First American gets the money, go ahead and give it to Remington at that time, then you wouldn't have a claim of any sort against Remington, would you? If the agreement that we had signed said First American will give the money to Rockwell immediately at closing, then I would agree that would be a problem, but the problem wouldn't be that that's not, if the contract was silent, let's say that the contract didn't have any provision, then we have the same exact claim. It's just that we have one less reason to do it. See, the law is not that the ESCO agent becomes a party to the contract, or that the ESCO agent now has all the duties under the contract. This ESCO agent didn't assume any of the obligation to transfer the property to us. It seems to me that all your theories, including breach of fiduciary duty, depend on what First American is required to do under the contract, because if it was supposed to disperse the money immediately, then your claims would disappear. No, but if the contract was silent, again, if the contract was silent, we would still have this claim, because First American knew that they were receiving this money, they knew that these properties were unbuilt, they knew that these properties were vacant land, they had closed the transaction buying the vacant land a few weeks prior, and they knew that we were paying the full purchase price with the building. Our contention is, and there's case law supporting it, based on that fiduciary duty, they would have at least an obligation to communicate to us that the money was all being given to Rockwell. We didn't know that. Had we known that, we wouldn't have done these deals. To the extent you have that claim, you could argue that's not dependent on the contract. But your claims, in fact, depend in part on the contract, and to that extent it's arbitrable. Let me just post it. If some of your claims are dependent on the terms of the contract and some aren't, what happens with respect to arbitration? Well, iSports is the answer, and Attracure, which is a federal circuit case, digesting the Ohio law and kind of stating the principles that it took from it, consistent with iSport, both tell you that that would be a situation where we have claims that are not entirely dependent on the breach of contract. They may touch upon the contract, but the underlying theories are tort, or in this case, we have a new idea when we get back to the trial court, which is this whole idea of maybe the breach of the implied escrow agreement. But even that doesn't make them parties to the contract. I think that iSports and Attracure would then control and say this is something that is related to the contract, but it is not so closely related, and since they didn't undertake the duties and obligations of the contract, we're not suing them for not delivering, we're not suing them for failure to close the transaction or something. But why aren't your claims for like aiding and abetting tortious conduct, conspiracy, materially aiding state law securities fraud, why don't those claims fall within this sort of concerted misconduct exception and allow the FAA to come in and invoke the arbitration clause provisions under an equitable theory under both Ohio and Florida law? Well, this will be, I've got three minutes, so I think we can get this answer without any trouble there. But the concerted misconduct theory is one that has some appeal here, because there are some questions as to whether there's a conspiracy, whether these third parties came in and meddled. Reason number one is, is because under both Florida and Ohio law, we have to look to the language of the contract to determine the scope of the arbitration agreement. If you're familiar with the CROMA case that we cite in our briefing, CROMA is a case that has everything. It's got makeup, it's got funny puns, it's got the Kardashians, it's a great case. It's got everything. But what it stands for is the proposition that unless someone has actually become a party, has taken on the obligations, the full obligations of the contract, essentially taken it by an assignment I would say, then when you have an arbitration clause that is limited narrowly to disputes between the parties, any dispute with the third party would be outside of that. CROMA asked, the appellants in CROMA asked almost the exact same question that you just asked me, and they said, well, in that case it seems like it wouldn't be equitable to say, well, these third parties can't get benefit of this just because it defines the scope, and this is the answer they gave. They said they argued the doctrine based on notions of fairness should operate to permit a non-signatory who is not bound to an agreement to enforce it, notwithstanding the fact that the claim is outside of the arbitration clause's scope. Such a holding would be, and this is the court's conclusion, such a holding would be, well, inequitable. Under it we would effectively be rewriting the agreement between the signatories about which disputes they would arbitrate to require one of them to arbitrate disputes that they had not agreed to. That's the answer to the question, that's answer number one to the question, which is, which is, it's not in the scope of the dispute. Answer two to the question is, the whole purpose, and every case that, there are cases that don't discuss this, but it's not because they say something different, it's because they cut it short. Every case that discusses why we have the concerted misconduct exception says, the whole reason is, is because we don't want scoundrels out there saying, I'm going to sue this party because if I sue them, they don't have an arbitration clause and their conspirator who does have an arbitration clause, I'll leave them out. And so the whole purpose of the concerted misconduct is to say we want to stop the arbitration clause from being eviscerated by artful pleading or by picking the parties who are not parties to the agreement. When we're thinking about the concerted misconduct avenue here, how should we be thinking about the Rockwell waiver in assessing whether it applies? Took the words right out of my mouth. So that being the case, that the whole purpose is that we don't want to eviscerate the arbitration clause. This arbitration clause has already been well eviscerated by Rockwell. Not only did it waive it in writing, it also waived it by showing up and filing its own motion to dismiss and litigating the matter without ever demanding arbitration. I would submit that whatever arbitration rights there were in that contract are waived. The only disputes that it related to were disputes between the parties. Those are disputes between the buyers and Rockwell, which is a debtor in bankruptcy. I want to ask one question. You seem to assume it was a matter for the court to decide the scope of the arbitration agreement with respect to the co-conspirator. Would that not be something that the arbitrator would decide in the first instance? No. In this case it is for the court. There are instances where an arbitration agreement itself commits that issue to the arbitrator, and frankly courts are all over the map on what happens in that instance. But where there is no such provision, it is the province of the court to determine whether a matter is arbitrable. Thank you.